Filed 12/29/20  Marriage of Weyer CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Marriage of MARY ANN and THOMAS E. WEYER. | B298035 |
| | (Los Angeles County Super. Ct. No. BD608419) |
| MARK D'ACHILLE, as Personal Representative, etc., | |
| Respondent, | |
| v. | |
| THOMAS E. WEYER, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Doreen Boxer, Commissioner.  Dismissed.

Law Offices of Michael T. Frawley and Michael T. Frawley for Appellant.

James Alexander Karagianides for Petitioner and Respondent.

Acrimonious marriage dissolution proceedings between Mary Ann Weyer (Mary Ann) and Thomas Weyer (Thomas) eventually resulted in a marital settlement agreement stipulating that they would sell the home they owned as joint tenants (dividing the proceeds between them), that life insurance policies "on [Mary Ann's] name and owned by her" were her separate property, and that the parties waived their right to appeal from a judgment entered pursuant to the terms of their agreement. Mary Ann had already been diagnosed with cancer when the agreement was executed, and when she later died, the home had not yet been sold and it appeared Thomas was still the listed beneficiary on file for one of Mary Ann's life insurance policies. The family court later entered a judgment that incorporated the settlement agreement's terms and denied Thomas's request that he be declared the sole owner of the home and deemed entitled to the proceeds of that life insurance policy. We now consider whether Thomas can seek reversal on appeal of the court's ruling that he should not receive either asset.

## I. BACKGROUND

### A. *The Settlement Agreement*

Mary Ann and Thomas married in 1990. In 2013, Mary Ann was diagnosed with advanced stage multiple myeloma cancer and told she had only months to live. Mary Ann and Thomas separated later in 2013, and a status-only judgment of dissolution was entered in 2016.

In 2017, Mary Ann and Thomas participated in a mandatory settlement conference (with a retired judge serving as a mediator) and were able to reach a settlement to divide marital assets. They memorialized the agreed upon terms by

2

handwriting them on a pre-printed court settlement form.  The agreement was signed by Mary Ann and her attorney; Thomas was unrepresented and signed alone.

The settlement terms that matter for purposes of this appeal concern the disposition of (1) a life insurance policy and (2) the marital residence at 22244 Parthenia Street in West Hills, California (the Home).  Regarding the policy, the settlement agreement states "[t]he following PROPERTY, whether community or separate, is awarded and confirmed to the PETITIONER [i.e., Mary Ann] as the separate property of the petitioner, along with any and all encumbrance thereon, and petitioner shall hold respondent [i.e., Thomas] harmless from such encumbrances: . . . (5) All life insurance policies on her name and owned by her[,] i.e.[,] WRL Policy & Motion Picture Industry Policy . . . ."  The "WRL Policy" identified in the settlement agreement refers to a $250,000 life insurance policy purchased through Western Reserve Life Assurance Company, for which claims were administered by Transamerica Premier Life Insurance Company (hereafter, the WRL/Transamerica policy).  Regarding the Home, which Mary Ann and Thomas held as joint tenants, the agreement states it shall be sold forthwith and Thomas would make a $50,000 equalization payment to Mary Ann from his one-half share of the sale proceeds.

In addition to these terms, the parties checked several boxes on the form settlement agreement beneath the heading "ORDERS RELATING TO JUDGMENTS ONLY."  One of the boxes checked in this section of the settlement agreement states "[a]ll parties waive the right to appeal, to request a statement of decision, and to move for a new trial."  The settlement agreement also includes a long recitation of the circumstances under which

3

it had been entered into, including an off the record colloquy with the court: "The court off the record per 664.6 swore the parties and inquired of the voluntary and free entry into this agreement. Both parties acknowledged they freely, voluntarily entered the agreement and no medical, mental health or drug use (prescription or otherwise) interferes with their willingness to reach the agreement. The parties acknowledged enough time to consider the agreement and consult [with] counsel of their choosing if they wished."

### B. Proceedings to Enforce the Settlement Agreement

The settlement agreement obligated Mary Ann's attorney to prepare a judgment consistent with the agreement and submit it to Thomas for his approval. Mary Ann's attorney did so, but received no response from Thomas. A couple months later, in March 2018, Mary Ann filed a request for an order in the family court seeking entry of judgment pursuant to the terms of the settlement agreement per the procedure authorized by Code of Civil Procedure section 664.6.[1] Mary Ann died a few days later.

Thomas opposed Mary Ann's request for order and filed his own request for an order that would deem him the sole owner of the Home and entitle him to the proceeds of Mary Ann's WRL/Transamerica policy. Thomas argued he was the sole owner of the Home because he and Mary Ann held the property as joint tenants with a right of survivorship. He argued he was

---

[1] In relevant part, the statute provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

4

entitled to the proceeds of the WRL/Transamerica policy because he remained the primary beneficiary on file with the insurance company when Mary Ann died.[2]

At a hearing November 5, 2018, the court considered the parties'[3] requests for orders. As to the Home, Mary Ann argued it was a community asset and the parties' settlement agreement took precedence over the form of title. As to the WRL/Transamerica policy, Mary Ann took the position that the family court could construe the settlement agreement to provide "that [Mary Ann] was going to own it, and the beneficiaries would have been who she wanted them to be, which appears to be self-evident from the document."

In a subsequent written decision signed by the court on May 21, 2019, the family court made the following rulings: "The court grants the request to enter the Settlement Agreement into judgment pursuant to Code of Civil Procedure § 664.6[;] [¶] The court denies the request that the entire interest in the prior family residence be transferred to [Thomas;] [¶] The court denies the request that [Mary Ann's] WRL/Transamerica life insurance

---

[2]     In her application for the WRL/Transamerica policy, Mary Ann designated Thomas as the primary beneficiary and her sister as the contingent beneficiary. Both Thomas and Mary Ann's sister filed claims with Transamerica after Mary Ann died. Transamerica indicated it would interplead the funds if the competing claimants did not reach an agreement.

[3]     Mary Ann's brother, Mark D'Achille, was appointed personal representative of her estate. In the discussion that follows, for simplicity's sake, we refer to Mary Ann as the respondent on appeal, even though her brother is the personal representative of her estate and the respondent.

5

policy be awarded to [Thomas;][4] [¶] The court grants the request that one-half interest of [an annuity held by Mary Ann] be awarded to Thomas;] [¶] The court denies [Thomas's] request for attorney's fees."

Thomas then noticed an appeal. It states he "shall be appealing the Court's November 5, 2018 Findings and Order After Hearing on [Thomas's] RFO re prior family residence and WRL/Transamerica life insurance benefits. The Order was filed on May 21, 2019."

## II. DISCUSSION

In the settlement agreement, the parties waived their right to appeal from any judgment entered pursuant thereto. The family court entered such a judgment, in response to Mary Ann's request, pursuant to Code of Civil Procedure section 664.6. Thomas nevertheless purports to appeal from the family court's ruling predicated on the settlement agreement, and Mary Ann argues the appeal must be dismissed pursuant to the appellate waiver provision to which the parties agreed. (See generally

---

[4]    In a section of the court's decision explaining its findings, the court wrote: "[T]he Court finds that there is no dispute that [the WRL/Transamerica] policy was awarded to [Mary Ann] in the settlement agreement. The Court finds that [Thomas] has presented evidence that he is named as the sole primary beneficiary. However, the Court finds that after the division, which was as of the date of the settlement agreement, the parties would have the ability to change the beneficiary and [Mary Ann's] personal representative at this point is that person. The Court therefore finds that the policy, the law, is to permit the beneficiary designation to be changed. The Court further finds that it awards the policy to [Mary Ann]."

*Pratt v. Gursey, Schneider & Co.* (2000) 80 Cal.App.4th 1105, 1108 [explaining a party may expressly waive the right to appeal and dismissing the appeal pursuant to such an express waiver].)

Thomas offers a single argument to avoid dismissal: the claim that his waiver of the right to appeal was not knowing and intelligent. Here is how he puts it in his reply brief: "[Thomas] was not represented by an attorney when the [settlement agreement] was executed. There is no explanation in the [settlement agreement] of the meaning and effect of 'All parties waive the right to appeal . . .['] at Paragraph 902. There is no indication in the [settlement agreement] that [Thomas] knowingly and intelligently understood what a 'waiver of right to appeal' means. There is no Reporter's Transcript to confirm that the Court made an inquiry of [Thomas] as to a 'knowing and intelligent waiver of his right to appeal.' [¶] The appeal is from the Trial Court's decision issued on November 5, 2018 concerning [Thomas's] Request for Order which was filed on September 28, 2018, over . . . one year after the July 24, 2017 [settlement agreement] was executed. [¶] [Mary Ann] has not presented any competent evidence that [Thomas] made a knowing and intelligent waiver of his right to appeal of a non-filed, non-court approved Handwritten Agreement at a time when he was not represented by an attorney. This mandates that [Mary Ann's] request that this appeal be dismissed for lack of jurisdiction be denied."

We find Thomas's position unconvincing on the record presented—in particular, in light of the settlement agreement that he himself signed. Not only does that agreement recite in understandable fashion the terms agreed to with the mediator's assistance, it memorializes in significant detail an off the record

7

colloquy between the parties and the court that took place to ensure just what Thomas claims is lacking, namely, that both parties knowingly and voluntarily agreed to the terms of the agreement.  By signing the agreement, Thomas confirmed—while under oath before the court—that he freely and voluntarily entered into the settlement agreement, that he had enough time to consider the agreement, and that he had the opportunity to consult with counsel about the terms of the agreement if he so chose.  That is ample evidence of his knowing and voluntary assent to the agreement's terms, including the waiver of the right to appeal therein, and we shall accordingly enforce the appellate waiver.

### DISPOSITION

The appeal is dismissed.  Respondent is awarded costs on appeal.


### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.